UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cr-00266-TWP-MJD |
| ) | |
| COLLIN MOORE, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on a Motion to Suppress filed by Defendant Collin Moore ("Moore"). (Filing No. 100.) Moore is charged with one count of Conspiracy To Possess With Intent To Distribute Methamphetamine And Heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Filing No. 38.) He requests that the Court suppress statements made by him on September 15, 2020, and all evidence obtained directly or as a derivative of those statements under *Miranda v. Arizona,* the Due Process Clause of the 5th Amendment of the United States Constitution and the 6th Amendment of the United States Constitution Right to Counsel. He also requests an evidentiary hearing. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law and **denies** the Motion to Suppress.

**I.   FINDINGS OF FACT**

On September 15, 2020, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") executed two search warrants at two Indianapolis, Indiana locations pursuant to an ongoing investigation of suspected drug trafficking activity. One of these two locations was Moore's personal residence, which Moore was in at the time the search warrant was executed. During the search of the home, Moore was interviewed by ATF Special Agent Todd Bevington ("Agent Bevington"). Agent Bevington recorded the interview with Moore, which included Agent

Bevington reading Moore his *Miranda* warnings before the interview began. Moore spoke with Agent Bevington and admitted that he had been selling methamphetamine weekly since December 2019 and had recently begun selling heroin. Moore also admitted that he had instructed another individual to sell drugs at the second location where a search warrant was being executed.

The interview with Moore took place between 6:15 a.m. and 7:30 a.m. on September 15, 2020. It was conducted in three parts, each recorded by Agent Bevington, with a break of unspecified time in between each part (two breaks total). The first part of the interview was slightly over 19 minutes long, the second was just short of 34 minutes, and the third was roughly 9 and half minutes long. Agent Bevington only provided the *Miranda* warnings at the start of the first part of the interview and did not repeat them prior to beginning the second or third.

## II. CONCLUSIONS OF LAW AND DISCUSSION

As an initial matter, the Court determines that a hearing is not required. A district court is not required to conduct an evidentiary hearing on every motion to suppress. The Seventh Circuit has explained that, "[a] defendant seeking an evidentiary hearing on a motion to suppress must provide sufficient information 'to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.'" *United States v. Juarez*, 454 F.3d 717, 719-20 (7th Cir. 2006) (citing *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998)). To justify relief, motions to suppress must be "sufficiently definite, specific and non-conjectural" and must be "detailed enough to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *Coleman*, 149 F.3d at 677 (*United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988)). The Court "must conduct such a hearing 'only if evidence on an issue of fact is necessary to the decision of the motion,'" *Rollins*, 862 F.2d at 1291 (quoting

*Nechy v. United States*, 665 F.2d 775, 776 (7th Cir. 1981)). Because Moore requested the hearing, he "[bears] the burden of showing that there were disputed issues of material fact necessitating an evidentiary hearing." *Id.* Moore has failed to meet that burden. His first assertion, that suppression is required based on insufficient *Miranda* warnings, is a purely legal question. Regarding his second assertion—undue coercion—Moore's interview was recorded, and there are no factual disputes, so an evidentiary hearing on the Motion to Suppress is unnecessary.

Moore askes that the Court suppress his statements and all evidence obtained directly or as a derivative of the three separate statements he made on September 15, 2020. (Filing No. 100 at 1.) Without providing any supporting case law, Moore first asserts that Agent Bevington failed to advise him, under *Miranda*, that "You can decide at any time to exercise these rights and not answer any questions or make any statements." *Id.* He also asserts that Agent Bevington's failure to readvise him of the *Miranda* warnings before beginning the second and third parts of the interview was a violation of his right to remain silent. *Id.*

In response, the Government argues that Agent Bevington properly advised Moore of his rights under *Miranda*. (Filing No. 103 at 2.) The Government asserts that "[s]ubstance, not form, is the test," and the recorded interview clearly demonstrates Agent Bevington articulated the four required warnings. *Id.* at 3. Additionally, the Government argues that there was no requirement to readvise Moore of the *Miranda* warning during the second and third parts of the interview. *Id.* The Government points out that, "[t]he rights need not be repeated after a break in questioning, as long as the waiver is otherwise valid." *Id.* (citing *Wyrick v. Fields*, 495 U.S. 42 (1982)).

The Court agrees with the Government. The *Miranda* warnings provide a procedural safeguard to protect a suspect's privilege against self-incrimination during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 477 (1966). As the United States Supreme Court made clear

3

in *Florida v. Powell*, 559 U.S. 50, 59-60 (2010), *Miranda* only prescribes four warnings that must be provided to a suspect: (1) the right to remain silent; (2) that anything said can be used against him or her in a court of law; (3) the right to the presence of an attorney; and (4) if he or she cannot afford an attorney, one will be appointed to him or her prior to questioning if desired. Contrary to Moore's argument, Agent Bevington was not required to advise Moore that he could "decide at any time to exercise these rights and not answer any questions or make any statements."

Likewise, there was no requirement to repeat these *Miranda* warnings after two breaks were taken during the interview. "The lapse of time between administration of the *Miranda* warnings and the suspect's statement is one of the factors to consider in determining the validity of a waiver of *Miranda* rights." *U.S. ex rel. Patton v. Thieret*, 791 F.2d 543, 547-48 (7th Cir. 1986). The Seventh Circuit has made clear, however, that a break of a few minutes does not require that the warnings be provided again. *See id.* (forty minutes did not require that *Miranda* warnings be given again); *U.S. ex rel. Henne v. Fike*, 563 F.2d 809, 814 (7th Cir. 1977) (nine hours between warnings and waiver not too long).

Here, the three-part interview took place between 6:15 a.m. and 7:30 a.m., which is approximately 75 minutes total. Adding the time of each portion, the total interview was 62 minutes and 23 seconds long. This means that, at most, the remaining time for the two breaks was 12 minutes and 37 seconds. Neither break could have been long enough to require that Moore be readvised of his *Miranda* rights. Agent Bevington's advisement at the beginning of the interview was adequate.

Moore next argues that his statements and any derivative evidence should be suppressed because he only participated in the interview "due to undue coercion from law enforcement authorities." (Filing No. 100 at 1.) Specifically, Moore states that he was told during the first

4

interview "that he could avoid being taken into custody/jail on September 15, 2020 if he provided certain information to law enforcement authorities." *Id.* at 2. Moore contends this promise of leniency was implied during the other two parts as well. *Id.* He argues, without any supporting case law, that this coercion was a violation of the Fifth Amendment's due process clause and his Sixth Amendment right to counsel. *Id.*

The Government responds that the recorded interview between Agent Bevington and Moore speaks for itself and shows no coercion took place. ([Filing No. 103 at 4](#).) The Government contends, "[w]hile the possibility of [Moore] staying out of custody that day was discussed as a possibility . . . , at no time did Agent Bevington or anyone else ever indicate that was a certainty … that making a statement would procure that result." *Id.* The Government argues Moore was fully informed of his *Miranda* rights, freely and willingly waived those rights, and voluntarily spoke with Agent Bevington. *Id.* at 4-5.

The recorded interview supports the Government's position. The interviews show no evidence that Moore's statement was unduly coerced. During the first interview, Agent Bevington requested that Moore be honest and informed Moore that he had videos of him selling methamphetamine. Agent Bevington explained that Moore could "decide if you're going to get charged today or if there is something that you can do that is productive for the Government, then there is a chance that you can stay out if you can do something worthwhile." Agent Bevington also informed Moore that a federal prosecutor is "waiting for us to call", and "the prosecutor will make the decision whether you get arrested today". Moore requested some time to think about what he would do. Agent Bevington agreed and the first interview ended so that Moore could "think" and officers continued to search the residence. In the second interview, Agent Bevington explained that he understood Moore was being asked to make an informed decision in a short

5

amount of time, but Moore had to make a decision whether he wanted to talk. In the third interview, Moore gave a statement.

A confession is "voluntary" if the government demonstrates that under the totality of the circumstances and by a preponderance of the evidence that it was not secured through psychological or physical intimidation but rather the "product of intellect and free will." *United States v. Haddon*, 927 F.2d 942, 945-46 (7th Cir. 1991) (quoting *United States v. Holleman*, 575 F.2d 139, 142 (7th Cir. 1978)). The "test for a voluntary confession is 'whether the defendant's will was overborne at the time he confessed.'" *Id.* (quoting *United States v. Hocking*, 860 F.2d 769, 774 (7th Cir. 1988)). False promises may be evidence of involuntariness, at least when paired with more coercive practices or especially vulnerable defendants as part of the totality of the circumstances. *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (pre–Miranda confession found involuntary based on false promise of leniency to indigent mother with young children, combined with threats to remove her children and to terminate welfare benefits, along with other factors). However, the United States Supreme Court allows police interrogators to tell a suspect that "a cooperative attitude" would be to his benefit. *Dassey v. Dittman* 877 F.3d 297, 304 (7th Cir. 2017) (quoting *Fare v. Michael C.*, 442 U.S. 707, 727, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) (reversing finding that confession was involuntary).

Moore contends that his statements were coerced by Agent Bevington implying throughout all three recorded statements that he could avoid being taken into custody if he provided certain information to law enforcement authorities. (Filing No. 100 at 2.) Examining the totality of circumstance, the record does not evidence coercion. Moore was told that he would be arrested regardless, and that his statement would only result in a reduced sentence. He was given time to think about his decision of whether he would make a statement. There was no physical or

psychological intimidation, or deceptive interrogation tactics which overcame Moore's free will. Instead, it was explained that a cooperative attitude would be to his benefit. But even if Moore was misled, the Seventh Circuit has repeatedly held that "a law-enforcement agent may actively mislead a defendant in order to obtain a confession, so long as a rational decision remains possible." *Conner v. McBride*, 375 F.3d 643, 653 (7th Cir. 2004); *see also United States v. Sturdivant*, 796 F.3d 690, 697 (7th Cir. 2015); *United States v. Ceballos*, 302 F.3d 679, 695 (7th Cir. 2002). The Court concludes, based on the totality of the circumstances, that Agent Bevington's actions were reasonable and Moore's statements from September 15, 2020 were not coerced. Moore's motion is **denied**.

### III.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Moore's Motion to Suppress (Filing No. 100).

**SO ORDERED.**

Date: 1/6/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ronald L. Gemma, Jr.
GEMMA & KARIMI LLP
ron.gemma@yahoo.com

Kathryn Y. Dinardo
DINARDO LAW P.C.
kate@dinardolawoffice.com

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
michelle.brady@usdoj.gov